UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

METROPOLITAN LIFE INSURANCE
COMPANY,

    Plaintiff,

v.                                           Case No:   6:14-cv-473-Orl-22TBS

HEATHER BELL, ROBERT SLOTNICK
and MINISTRI FAMILY, LLC,

    Defendants.

## AMENDED REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant Heather Bell's Emergency Motion to Dismiss Interpleader (Doc. 34) and Plaintiff Metropolitan Life Insurance Company's ("MetLife") Motion for Interpleader and Dismissal from this Action with Prejudice (Doc. 36).  MetLife and Defendant Ministri Family, LLC ("Ministri") have filed responses in opposition to Bell's motion.  (Docs. 37-38).  Bell has filed a response in opposition to MetLife's motion.  (Doc. 39).  Ministri and Defendant Robert Slotnick have no objection to the relief requested in MetLife's motion.  (Doc. 36, p. 13).  On September 23, I entered a Report and Recommendation recommending that Bell's motion be denied and MetLife's motion be granted.  (Doc. 40).  On October 7, 2014, MetLife filed a motion for clarification of my recommendation that it be required to post a bond.  (Doc 42).  After reading MetLife's motion, I withdrew my original report and recommendation and submit this amended report and recommendation in its place.

### Background

In this interpleader case, MetLife asks the Court to resolve competing claims to

payments due on an annuity it issued to Bell in 1994 in connection with a personal injury settlement.  (Doc. 6, ¶ 8; Doc. 6-1, pp. 2-4).   Under the terms of the annuity, MetLife promised to pay Bell $689,504 in 17 payments spread over 40 years.  (Doc. 6-1, pp. 7-8).  The annuity payments are graduated so that the last payments are the largest–the last four payments alone total $404,504.  (Id.).

Short of cash, Bell sought to transfer her rights to the next two installment payments to a settlement funding company in exchange for a lump sum cash payment.  (Id. ¶¶ 10; Doc. 6-1, pp. 10-11).  She reached an agreement with Peachtree Settlement Funding, LLC, which petitioned the Circuit Court of the Fifth Judicial Circuit in and for Sumter County Florida on April 3, 2013, for approval of the transfer.  (Doc. 36, ¶ 5; Doc. 6-1, pp. 10-30).  On April 30, 2013, the court approved the petition (Doc. 36, ¶ 6; Doc. 6-1, pp. 32-35), but vacated its order three months later on Peachtree's motion, after MetLife informed Peachtree that it had received a Notice of Lien *Fieri Facias* from Slotnick's attorney.  (Doc. 36, ¶¶ 9-10; Doc. 6-1, p. 42).  The Notice stated that Slotnick held a judgment against Bell that was entered by the Circuit Court of the City of Richmond, Virginia on September 28, 2010, and a Writ of *Fieri Facias* on that judgment that was issued on September 14, 2011.  (Doc. 6-1, pp. 37-38).

Around the same time, Bell filed a declaratory judgment petition against MetLife and Slotnick in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, seeking a declaration that the annuity is exempt from garnishment under Florida law.  (Doc. 36, ¶ 15; Doc. 6-2, pp. 26-30).  She moved for summary judgment, which MetLife opposed; and Slotnick appeared specially and moved to dismiss for lack of personal jurisdiction.  (Doc. 36, ¶¶ 17-10).  On November 1, 2013, the Orange County court denied Bell's motion for summary judgment, finding there were "several genuine

issues of material fact."  The court also said it had "significant concerns regarding whether or not the Court has jurisdiction to address this matter."  (Doc. 36, ¶ 20; Doc. 6-2, pp. 54-55).

Bell then returned to the Sumter County court and, on December 30, 2013, filed a motion asking it to reconsider its order vacating its earlier order approving the transfer.  (Doc. 36, ¶¶ 11; Doc. 6-1, pp. 44-48).  MetLife objected on the ground that it cannot take any action regarding the annuity without risking multiple liability.  (Doc. 36, ¶ 12; Doc. 6-2, pp. 2-21).  On January 23, 2014, the Sumter County court denied Bell's motion.  (Doc. 36, ¶ 13; Doc. 6-2, pp. 23-24).

In 2012, Ministri obtained a judgment against Bell from the Richmond, Virginia circuit court.  It registered that judgment in the Orange County court, see Ministri Family LLC v. Bell, Case No. 2012-CA-017112-O, and began taking measures to collect in both states.  (Doc. 36, ¶¶ 38, 42).

Facing conflicting claims to the annuity from Bell, Slotnick, and Ministri, MetLife filed this interpleader action on March 21, 2014.  (Doc. 1).  Ministri answered the complaint.  (Doc. 15).  Slotnick filed a motion to dismiss for lack of personal jurisdiction (Doc. 10), which the Court denied by order dated August 15, 2014.  (Doc. 31).  Bell did not answer the complaint, but she did participate in the preparation of the Case Management Report, and she entered an appearance on June 13, 2014.  (Docs. 24-26).  On August 25, MetLife moved to dismiss Slotnick from this case, after he disclaimed any interest he might have in the annuity.  (Doc. 32).  On August 28, Bell filed her Emergency Motion to Dismiss, asking the Court to dismiss the case "so that Bell can transfer her annuity proceeds as allowed by Florida law and end her financial hardship."  (Doc. 34, pp. 8-9).  On September 8, MetLife filed its motion asking the Court to approve

its amended complaint for interpleader, dismiss it from this case, and enjoin further litigation against it relating to the fund.   (Doc. 36, pp. 12-13).

Despite the pendency of this case, litigation has continued in state court.   On March 21, 2014, Ministri initiated garnishment proceedings against MetLife and Bell in the Richmond, Virginia court.   That proceeding has been stayed pending resolution of this case.   (Doc. 36, ¶¶ 43-48).   On July 11, 2014, Bell filed a Claim of Exemption and Request for Hearing in the Orange County court action brought by Ministri to enforce its judgment.   (Doc. 36, ¶ 39).   The Orange County court denied the motion on the ground that there was no writ of garnishment pending from which the annuity funds could be exempt.   (Doc. 36, ¶ 40; Doc. 36-1, p. 11).   On August 1, 2014, Stone Street Capital LLC brought a petition in the Circuit Court for the 17th Judicial Circuit in and for Broward County, asking that court to approve an agreement it made with Bell to transfer two of her annuity payments in exchange for a lump sum cash payment.   (Doc. 36, ¶ 49; Doc. 36-1, pp. 25-43).   MetLife filed its opposition to the Stone Street petition on August 20, 2014. (Doc. 36, ¶ 51; Doc. 36-2).

## Discussion

The federal interpleader statute gives the district court jurisdiction of "any civil action of interpleader or in the nature of interpleader," where the claimants are minimally diverse and the plaintiff has "any obligation written or unwritten to the amount of $500 or more."   28 U.S.C. § 1335(a)(1).   In a statutory interpleader case, the court's jurisdiction is conditioned on the plaintiff's depositing the stakes into the registry of the court or "giv[ing] bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned on the compliance by the plaintiff with the

future order or judgment of the court with respect to the subject matter in controversy." 28 U.S.C. § 1335(a)(2).

The purpose of interpleader is to protect a stakeholder from the burden of dealing with multiple claims against the same fund and to relieve the stakeholder from the necessity (and risk) of identifying which claims are meritorious.  Perlman v. Fidelity Brokerage Services, LLC, 932 F. Supp. 2d 397, 415 (E.D.N.Y. 2013).  "Interpleader actions normally proceed in two stages: first, the court 'determines whether the interpleader action is appropriate and the stakeholder is entitled to bring the action,' and second, the court determines 'the rights of the competing claimants to the fund.'"  Id. (quoting Fidelity Brokerage Services, LLC v. Bank of China, 192 F. Supp. 2d 173, 177 (S.D.N.Y. 2002)).

The Court has jurisdiction over this case.  The claimants are minimally diverse, as Slotnick is a citizen of Virginia and Bell is citizen of Florida.  The amount remaining to be paid on the annuity far exceeds the $500 jurisdictional minimum; indeed, the next payment–$25,000 due in December 2015–would alone be sufficient.  Plaintiff has offered to deposit the annuity payments into the registry of the Court or post a suitable bond.  And, the multiplicity of pending lawsuits demonstrates that this is an appropriate case for interpleader.  So far, MetLife has had to file pleadings in five state court cases pending in four different courts located in two different states.  The federal interpleader statute was enacted to free stakeholders from the expenses associated with such piecemeal litigation.

This is not a case where the federal interpleader court should "decline jurisdiction and defer to state court proceedings for the sake of judicial administration and efficiency." NYLife Distributors, Inc. v. Adherence Group, Inc., 72 F.3d 371, 381 (3d Cir. 1995).

When MetLife filed this lawsuit, no state court had definitively assumed jurisdiction over all of the adverse claimants, even though five separate cases were pending in four different courts.   Slotnick objected to the Florida court's jurisdiction in Bell's declaratory judgment action and, although he has since disclaimed his interest in the fund, the state-court picture is still muddy.   Both the Richmond, Virginia and Orange County, Florida courts have personal jurisdiction over Bell, Ministri, and MetLife.   Deferring to those courts would subject MetLife to the burdens of parallel litigation that the federal interpleader statute was enacted to prevent.

Bell argues that interpleader is inappropriate because MetLife "has ... acted as ... a vested stakeholder on a mission to prevent ... Bell from transferring her annuity proceeds" by objecting to Bell's efforts to transfer her annuity proceeds.   (Doc. 39, pp. 1-2). MetLife has no vested interest in this case–it will have to pay the remaining amount due on the annuity to someone no matter the outcome.   And, Bell presents no evidence that MetLife's objections are based on spite or animus toward her.   Rather, the parties' papers show that MetLife filed this case to avoid being dragged even further into the dispute between Bell and her creditors.

Bell argues that interpleader is unnecessary because the annuity proceeds are not subject to garnishment in a Florida court.   (Doc. 39, pp. 2-3).   This argument is problematic.   First, there is no requirement that a stakeholder must wait until it has received legal process to bring an interpleader action against potential adverse claimants to a fund.   The federal interpleader statute–which permits a plaintiff to bring an interpleader action against parties who "are claiming or <u>may claim</u>" to be entitled to the fund–plainly contemplates that a stakeholder may bring an interpleader action against a debtor and her creditors before any of the creditors attempt to garnish the fund.   28

U.S.C § 1335(a)(1) (emphasis added).   Second, the fact that Bell's creditors are unlikely to obtain a garnishment order from a Florida court, see FLA. STAT. § 222.14 (exempting "the cash surrender values of life insurance policies issued upon the lives of [Florida] citizens or residents" and "the proceeds of annuity contracts issued to [Florida] citizens or residents" from garnishment); Slatcoff v. Dezen, 76 So. 2d 792, 794 (Fla. 1954) (holding that this exemption applies to prohibit garnishment of the cash surrender value of a life insurance policy issued before the debtor moved to Florida), does not mean that MetLife has nothing to worry about.   It could face a garnishment order issued by the court of another state where the exemption laws are different.   In fact, Ministri asked the Richmond, Virginia court to issue just such an order, before that proceeding was stayed pending the resolution of this case.   (Doc. 36, ¶¶ 43-48).   If, as Bell requests (Doc. 34), this Court dismisses MetLife's interpleader action, there will be nothing to stop Ministri from pursuing its garnishment action in the Richmond court.[1]

MetLife found itself in the middle of this dispute between Bell and her Virginia judgment creditors for no reason other than the fact that it issued an annuity to Bell in connection with the settlement of a personal injury case arising from a New York automobile accident more than two decades ago.   MetLife has turned to the federal interpleader statute to extract itself from this multi-jurisdictional conflict.   Now that it has summoned Bell and her creditors, it asks the Court to be released from the burden of litigation and the risks of multiple liability in connection with the annuity.   MetLife is entitled to this relief.

---

[1] The irony of Bell's position is that if she prevails, Ministri may succeed in garnishing the annuity in Virginia while it may fail in Florida due to the differing state laws.

Jurisdiction under the federal interpleader statute is conditioned on the deposit of the fund or an appropriate bond.  28 U.S.C. § 1335(a)(2).  Presently, there is nothing to deposit since no payments are currently due from the annuity.  This causes me to recommend the Court require MetLife to post a bond for the amount due under the annuity.  See 7 Wright & Miller, Federal Practice & Procedure § 1716 (3d ed.).  The statute requires the bond to be in "amount and with such surety as the court or judge may deem proper."  28 U.S.C. § 1335.  Ordinarily, the amount of the bond should be sufficient to cover the largest amount claimed.  7 Wright & Miller, Federal Practice & Procedure § 1716 (citing, among other cases, In re Sinking of the M/V Ukola, 806 F.2d 1 (1st Cir. 1986); Gannon v. American Airlines, Inc., 251 F.2d 476 (10th Cir. 1958); New York Life Ins. Co. v. Lee, 232 F.2d 811 (9th Cir. 1956)).  Bell claims she is entitled to the entire annuity, and Ministri's garnishment summons demanded $619,971.45, which exceeds the remaining payments due on the annuity.  Therefore, I recommend the Court require a bond for the entire amount of the remaining annuity payments.

I previously recommend the Court allow MetLife to give the bond without an independent surety—in other words, permit MetLife to serve as its own surety.  A court may allow an interpleader plaintiff to post a bond without independent surety so long as it provides a good reason for doing so.  Farmers Elevator Mutual Ins. Co. v. Jewett, 394 F.2d 896, 898 (10th Cir. 1968), (disapproving of district court's approval of bond without surety "without giving any reason for dispensing with surety," but finding any error harmless—and thus, by implication, not jurisdictional—because no party objected).

I explained that I found no reason to require an independent surety.  MetLife has no interest in the annuity funds.  Cf. Prudential Ins. Co. v. Bank of Commerce, 857 F. Supp. 62, 64 (D. Kan. 1994) (refusing to allow interested stakeholder to self-surety bond).

No party has raised any doubt that MetLife lacks the financial ability to make the required payments, and if MetLife acts as a self-surety, the risk of non-payment does not change. If a surety is required, someone will have to bear the cost of obtaining one. If Met Life employs a surety then the prevailing party will have received an unjustified windfall, in that there will be two obligors liable for performance of the annuity contract, rather than one. If MetLife seeks to recover the cost of obtaining a surety, the payments under the annuity will be diminished. By contrast, dispensing with a surety leaves the parties in the same position they would have been in had this dispute been resolved without resort to interpleader.

After I entered my original report and recommendations, MetLife contacted the clerk concerning the procedure for posting a bond. (Doc. 42, p. 3). The Clerk told MetLife that "any bond posted with the Clerk of Court must be accompanied by ... an affidavit of exclusive ownership of cash deposit; and (2) IRS Form 8300, Report of Cash Payments Over $10,000 Received in a Trade or Business." (Id.). The clerk also said that "when a cash bond is posted, including self-surety bonds in the form of cash, cashier's checks, or money orders, the Clerk of Court immediately deposits the cash bond into the Court registry." (Id., p. 4). In its motion for clarification, MetLife argued that it should not have to pay the full amount of the annuity into the Court registry now, given that no payments are currently due and much of the outstanding amount will not come due for more than decade. (Id., pp. 4-5, 7-9). I agree that MetLife should not have to summon the funds to make all payments due in the future and that was not my intention in recommending that it be allowed to self-surety the bond. My

recommendation was, and is, that MetLife should be required to give its written promise to comply with the Court's orders regarding the disposition of the annuity funds.[2]

Although it previously proposed a bond, MetLife now suggests the Court dispense with the bond requirement and simply direct it to make payments as they become due. I would be inclined to dispense with the bond requirement too, were it not a condition of the Court's jurisdiction that the plaintiff either make a deposit or give a suitable bond.[3] Other courts have permitted statutory interpleader actions to proceed on an order directing payments as they come due, see, e.g., AIG Annuity Ins. Co. v. Law Offices of Theodore Coates, P.C., 2008 WL 4079982 (D. Colo. Sept. 2, 2008), but that would condition the Court's jurisdiction on MetLife's actually depositing the annuity payments. In my view, the better approach is to conclusively establish the Court's jurisdiction now by requiring MetLife to post a bond or the equivalent of a bond.

Therefore, I respectfully recommend that the Court order MetLife to docket its undertaking, signed by its authorized agent, promising to pay a total of $534,504 in annuity funds to the recipient(s) the Court directs. MetLife should be required to make payments to the recipient the Court directs as they come due per the terms of the annuity, with a further condition of the undertaking that if MetLife complies with the Court's orders regarding disposition of the annuity funds the undertaking is void, but otherwise, it

---

[2] This is analogous to a personal bond in a criminal case, where a criminal defendant "promises to pay a specified sum in the event of nonappearance." United States v. Stanley, 469 F.2d 576, 579 n. 4 (D.C. Cir. 1972).

[3] Rule 22 of the Federal Rules of Civil Procedure allows the court to dispense with the bond requirement if it deems a bond unnecessary. But Rule 22 does not provide a basis for jurisdiction; rather, some statutory grounds for jurisdiction is required. Here, the only possible alternative basis for jurisdiction is the federal diversity jurisdiction statute, 28 U.S.C. § 1332. But Plaintiff's Amended Complaint relies strictly on § 1335, the interpleader statute. (Doc. 6). In addition, Plaintiff has relied on the nationwide service of process provision, which is available only in statutory interpleader, and not rule interpleader, cases. (Doc. 12). So dispensing with a bond or deposit altogether is not an option.

remains in force. In this way, MetLife will have provided the equivalent of a bond without having to satisfy the clerk's requirements.

MetLife asks that, as a disinterested stakeholder, it be discharged from further liability to the Plaintiffs and that it be dismissed from this action with prejudice. When the stakeholder has no interest in the funds in controversy, it is appropriate to dismiss the stakeholder from the action once the stakeholder has deposited the funds or given the required bond. See 28 U.S.C. § 2361; General Electric Capital Assurance v. Van Norman, 209 F. Supp. 2d 668, 670 (S.D. Tex. 2002); Central Bank of Tampa v. United States, 838 F. Supp. 564, 567 (M.D. Fla. 1993). Since MetLife has no interest in the annuity payments, I recommend the Court enter an order dismissing it from this case, once MetLife has posted the bond.

MetLife also asks the Court to enjoin Defendants from pursuing other litigation against it in relation to the annuity funds. The interpleader statute allows a court to permanently enjoin claimants "from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument, or obligation involved in the interpleader action." 28 U.S.C. § 2361. While § 2361 authorizes federal courts to enter injunctions in favor of interpleader plaintiffs, it does not require them to do so. See Life Ins. Co. of North America v. Campbell, No. 6:13-cv-104-22TBS, 2013 WL 6070009, at *4 (M.D. Fla. Nov. 18, 2013) (citing Shell Pipe Line Corp. v. West Texas Marketing Corp., 540 F. Supp. 1155, 1162 (S.D. Tex. 1982); Commerce & Indus. Ins. Co. v. Cablewave, Ltd., 412 F. Supp. 204, 206 (S.D.N.Y. 1976)). Entering an injunction is always "an act of equitable discretion by the district court." eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006). To be entitled to a permanent injunction, a plaintiff must show that (1) it is likely to suffer an irreparable injury absent an injunction; (2) that remedies at law, such

as money damages, are inadequate to compensate for the injury; (3) that, considering the balance of hardships between the plaintiff and defendant, an injunction is warranted; and (4) that a permanent injunction would not disserve the public interest.  Id.   Pursuant to Rule 65(d)(1) of the Federal Rules of Civil Procedure, any order granting an injunction must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail-and not by referring to the complaint or other document-the act or acts restrained or required."

Although MetLife has not explicitly addressed the eBay factors in its motion, the facts and evidence it has presented demonstrate that an injunction is appropriate.  So far, the annuity has been the subject of five other lawsuits in two states.  One of those cases was filed by Bell in July 2014, while this case was pending.  Thus, there is at least a fair prospect that MetLife will be subjected to further litigation regarding the annuity if the Court does not enter an injunction.  If MetLife is dragged into additional litigation over the annuity, remedies at law–such as an award of attorney's fees against the opposing party–may not be adequate, because there is no guarantee that fees would be awarded and, even if fees were awarded, that they would be paid.  Thus, the balance of hardships tips in MetLife's favor.  Any litigation falling within the injunction's scope would lack merit given the Court's dismissal of MetLife, and being deprived of the ability to institute meritless lawsuits is not a "hardship."  See Citi Mortgage, Inc. v. Hubbard, Civ. No. 13-144 (JRT/JSM), 2014 WL 1303706, at *16 n. 19 (D. Minn. Mar. 31, 2014)  Finally, an injunction would serve the public interest because it will ensure that state courts (and possibly other federal courts) do not have to deal with duplicative litigation over the annuity.  See Nebraska Ass'n of School Boards, Inc. v. Strategic Governmental Solutions, No. 4:08CV3052, 2008 WL 1774989, at *3 (D. Neb. April 14, 2008) (finding that

interpleader injunction served the public interest because it would serve statutory goals of "limit[ing] multiple litigation and prevent[ing] inconsistent results").

MetLife also asks that Bell be enjoined from entering into any agreement to transfer any annuity payments.  This request should also be granted, because it is necessary to ensure that MetLife will not have to deal with further litigation regarding the annuity.  Two of the suits MetLife has had to litigate involved petitions filed in state court by non-parties seeking approval of the transfer of annuity payments.  If Bell is not enjoined from entering such agreements until this case is resolved, MetLife may find itself once again in state court objecting to a petition to transfer annuity payments.

Finally, Bell designated her motion as an "emergency" because she "is incurring irrevocable damage to her credit and suffering severe mental and emotional damages daily be being prohibited from transferring her annuity proceeds to pay for basic and necessary living expenses for her family and children due to the outstanding interpleader."  (Doc. 35, ¶ 28)  That Bell is suffering financial hardship does not constitute a true emergency.  This district's local rules provide that "[t]he unwarranted designation of a motion as an emergency motion may result in the imposition of sanctions."  M.D. FLA. LOCAL R. 3.01(e).  Moreover, Bell's concerns that this case will be "lengthy" and "expensive" (Doc. 35, ¶ 24) may well prove unfounded.  Although the deadline for dispositive motions is April 16, 2015, there is nothing stopping Bell or Ministri from filing an early summary judgment motion.  See FED. R. CIV. P. 56(b) ("Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at <u>any time</u> until 30 days after the close of discovery." (emphasis added)).

## Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

1. The Court DENY Bell's Emergency Motion to Dismiss (Doc. 34);

2. The Court GRANT MetLife's Motion for Interpleader (Doc. 36);

3. The Court enter an order requiring:

   a. MetLife to docket its undertaking, signed by its authorized agent, promising to pay a total of $534,504 in annuity funds to the recipient(s) the Court directs;

   b. MetLife to make payments as they come due per the terms of the annuity to the recipient(s) the Court directs; and

   c. That the condition of the undertaking is that if MetLife complies with the Court's orders regarding disposition of the annuity funds the undertaking is void, but otherwise, it remains in force.

4. The Court dismiss MetLife from this action with prejudice once its undertaking becomes effective;

5. The Court enjoin Bell, Slotnick, and Ministri from instituting or prosecuting any proceeding in any state or federal court affecting the annuity or annuity payments until the Court enters final judgment on the underlying dispute;

6. The Court enjoin Bell from entering into any agreement to transfer any annuity payments until the underlying dispute is resolved.

Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. Fla. R. 6.02, within fourteen (14) days after service of this report and recommendation.   Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings

- 14 -

on appeal.

        **RESPECTFULLY RECOMMENDED** at Orlando, Florida on October 9, 2014.

*[signature]*
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Unrepresented Parties