UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MINISTRI FAMILY, LLC,

      Plaintiff,

v.                                 Case No:   6:14-cv-00473-Orl-22TBS

HEATHER BELL a/k/a HEATHER GOOD,

      Defendants.

_____

## REPORT AND RECOMMENDATION

This matter comes before the Court on Plaintiff Ministri Family, LLC's ("Ministri") motion for summary judgement as to Defendant Heather Bell's ("Bell") claim of exemption from garnishment (Doc. 55); Bell's response in opposition to Ministri's motion (Doc. 62), which the Court construed both as a response and as a motion for summary judgment (Doc. 63); and Ministri's Response to Bell's motion (Doc. 65).   For the reasons that follow, I respectfully recommend that Ministri's motion be **DENIED** and Bell's motion be **GRANTED**.

### Background[1]

      This case presents a dispute between Heather Bell and one of her creditors, Ministri Family, LLC, over payments pursuant to a 1994 structured settlement of a personal injury case in which Bell, then known as Heather Good, was the plaintiff.   On November 9, 1994, Bell, the tortfeasor, and the tortfeasor's insurer entered into a "Release and Settlement Agreement" (the "Settlement") (Doc. 55-12 at 8-10).   Under the

---

[1] Except as otherwise noted, the facts in the following recitation are drawn from the parties' submissions (See Docs. 15, 54- 55, 61-62) and are either uncontroverted or, where controverted, are taken in the light most favorable to Ministri as the non-moving party on the motion I am recommending the Court grant.   See Battle v. Board of Regents, 468 F.3d 755, 759 (11th Cir. 2006).

terms of the Settlement, Bell released her claims against the tortfeasor and his insurer in exchange for a lump sum cash payment and a series of 17 periodic payments to be made over a period of 40 years starting on December 7, 1995 (Agreement, ¶¶ I.A-C, II.C).   The parties agreed that the Settlement would be "construed and interpreted under the laws of the State of New York."   (Id. ¶ III.C)

The Settlement contains a provision allowing the tortfeasor or his insurer to "make a 'qualified assignment' within the meaning of Section 130(c), of the Internal Revenue Code of 1986, as amended, of [their] liability to make the periodic payments."   (Id. ¶ II.B). Bell agreed to accept such an assignment made to Metropolitan Insurance & Annuity Company ("Metropolitan"), which is identified in the Settlement as "ASSIGNEE."   (Id.). The tortfeasor, insurer, and Metropolitan "reserve[d] the right to fund [their] liability to make periodic payments through the purchase of an annuity contact from Metropolitan Life Insurance Company" ("MetLife") (Id. ¶ II.D).   The tortfeasor, insurer, or Metropolitan would "be the owner of the annuity policy" and "have all rights of ownership," but could "direct the annuity carrier, [MetLife], to mail payments directly to [Bell]."   (Id.).   The Settlement also provides that if Bell dies before all payments are made, subsequent payments "shall be made to such person or entity as shall be designated in writing by [Bell] to [Metropolitan]."   (Id. ¶ II.E).   If Bell does not make a designation or the person designated has also died, payments will be made to Bell's estate.   (Id.).

In addition to the Settlement, Bell, the insurer, and Metropolitan executed a "Uniform Qualified Assignment and Release" (the "Assignment") dated November 9, 1994 which, like the Settlement, provides that it "shall be governed by and interpreted in

accordance with the laws of the State of New York."[2]   (Assignment, ¶ 5).   The Assignment acknowledges Bell's execution of the Settlement and recites that "[t]he parties desire to effect a qualified assignment within the meaning of and subject to the conditions of [I.R.C. § 130(c)]." (Id. ¶¶ A, B).   Under the terms of the Assignment, the insurer assigned to Metropolitan its liability to make the periodic payments listed in an addendum (Id. ¶ 1).   The Assignment provides that Metropolitan "is not required to set aside specific assets to secure" the payments, and that Bell "has no rights against [Metropolitan] greater than a general creditor."   (Id. ¶ 3).   It also provides that the payments may not "be accelerated, deferred, increased[,] decreased[,] anticipated, sold, assigned or encumbered."   (Id.)

In the Assignment, Metropolitan expressly reserves the right to "fund the Periodic Payments by purchasing a 'qualified funding asset' with the meaning of [I.R.C. § 130(c)] in the form of an annuity contract issued by [MetLife]."   The Assignment specifies that "[a]ll rights of ownership and control of such annuity contract shall be and remain vested in [Metropolitan] exclusively," but allows Metropolitan to "have [MetLife] send payments under any 'qualified funding asset' purchased hereunder directly to the payee(s) specified in Addendum No. 1." (Id., ¶¶ 6-7).   "Such direction of payments shall be solely for [Metropolitan Annuity]'s convenience and shall not provide [Bell] or any payee with any

---

[2]   The Assignment has been filed on multiple occasions by MetLife and Bell, but none of the copies is completely legible (Doc. 1-2 at 10-12; Doc. 6-2 at 10-12; Doc. 36-2 at 71-73; Doc. 62-1 at 7-9).   I have located a copy of what appears to be the same document, but of better quality, in Florida state court records publicly available online.   See Defendant Metropolitan Life Insurance Company's Response to Plaintiff's Motion for Summary Judgment at 9-11, Bell v. Slotnick, No. 2013-CA-008727-O (Fla. 9th Cir. Ct., Orange Cnty., Oct. 30, 2013).   By separate Order, I have advised the parties that I intend to take judicial notice of the copy of the Assignment filed in that state court case and docketed as an attachment to the Order (Docs. 66, 66-1).

rights of ownership or control over the 'qualified funding asset' or against [MetLife]."   (Id., ¶ 7).

The addendum to the Assignment, entitled "Description of Periodic Payments," identifies Bell as "Payee" and her mother, Sandra O. Good, as "Beneficiary."   (Id., Addendum 1).   The addendum lists the same payments as the Settlement, and provides that "Payee may request in writing that [Metropolitan] change the beneficiary designation under this agreement.   Any change of the beneficiary designation will only be made with [Metropolitan]'s consent.   [Metropolitan]'s decision will be final."   (Id.).

After the Assignment was executed, MetLife issued Group Annuity Contract No. 8281 bearing Certificate No. 38299 ("the Annuity") (Doc. 55-12 at 4-6).   The Annuity certificate identifies Bell as the "Measuring Life," Metropolitan as the "Owner," and Bell's mother as the "Beneficiary (if any)."   (Annuity, p. 1).   Like the Settlement and Assignment, the Annuity makes clear that Metropolitan "owns the annuity" and "will have the right at any time to designate the payee, including the Beneficiary, to whom benefits are payable under the annuity."   (Id., p. 2).   However, absent some contrary designation by Metropolitan, MetLife "will make all payments under the annuity to the person(s) named in the certificate."   (Id.).   A provision entitled "Proof of Living" provides MetLife the right to "require proof that the Measuring Life, the Beneficiary or other payee, as the case may be, is living on the date on which any annuity payment is to be made."   (Id.). Another provision, entitled "Nonassignability; Claims of Creditors," declares that the "certificate and the payments provided under it are nonassignable and will be exempt from the claims of creditors to the maximum extent permitted by law."   (Id.).   The last provision of the Annuity, entitled "Payment of Annuity," lists the periodic payments and states that MetLife "will make the payments ... to the payee named by [Metropolitan].

However, if the Measuring Life is not living on the date any such payment is payable, and unless the Owner directs otherwise, [MetLife] will pay such payment to the Beneficiary." (Id., p. 3).

Beginning December 7, 1995, MetLife has made payments under the Annuity to Bell according to the payment schedule in the Annuity, Assignment, and Settlement.   In its communications with Bell, MetLife identifies Bell as the "Annuitant" and "Payee" and lists "the remaining payments that you are entitled to under the ... structured settlement"– a term it uses interchangeably with "annuity."   (Doc. 62-1 at 10, 11).   In communications with Bell's creditors, MetLife has referred to the payments as being "payable ... to Heather Bell pursuant to a structured settlement annuity."   (Doc. 36-3 at 18).   Bell's creditors, including Ministri, have recognized that Bell has received the payments due under the Annuity from MetLife in the past and will continue to receive the payments in the future (Doc. 36-2 at 21; Doc. 55 at 2-3 (describing Ministri's efforts to garnish payments under the Annuity)).

In the wake of the late 2000s recession, Bell, her husband Jonathan Bell, and his company Old Homes Inc. ("OHI") became ensnared in litigation over real estate deals that had gone awry.   On September 28, 2010, Robert Slotnick obtained a consent judgment in the Circuit Court of the City of Richmond, Virginia against Bell, her husband, and OHI for $175,924 (Doc. 6-1 at 37).   On September 28, 2012, Ministri obtained a judgment from the same court against Bell and her husband for $250,000 plus attorney's fees and costs (Doc. 55 at 2; Doc. 55-1).   Ministri registered its judgment in the Circuit Court of

the Ninth Judicial Circuit in and for Orange County, Florida, and began taking measures to collect in both states (Doc. 36, ¶¶ 38, 42).[3]

Short of cash, Bell sought to transfer her rights to the next two installment payments to a settlement funding company in exchange for a lump sum cash payment (Id. ¶¶ 10; Doc. 6-1, pp. 10-11).   She reached an agreement with Peachtree Settlement Funding, LLC, which petitioned the Circuit Court of the Fifth Judicial Circuit in and for Sumter County Florida on April 3, 2013, for approval of the transfer (Doc. 36, ¶ 5; Doc. 6-1, pp. 10-30).   On April 30, 2013, the court approved the petition (Doc. 36, ¶ 6; Doc. 6-1, pp. 32-35), but vacated its order three months later on Peachtree's motion, after MetLife informed Peachtree that it had received a Notice of Lien *Fieri Facias*[4] from Slotnick's attorney (Doc. 36, ¶¶ 9-10; Doc. 6-1, p. 42).

Bell then filed a declaratory judgment petition against MetLife and Slotnick in the Orange County, Florida court, seeking a declaration that the Annuity is exempt from garnishment under Florida law (Doc. 36, ¶ 15; Doc. 6-2 at 26-30).   She moved for summary judgment which MetLife opposed.   Slotnick appeared specially and moved to dismiss for lack of personal jurisdiction.   (Doc. 36, ¶¶ 17-10).   On November 1, 2013, the Orange County court denied Bell's motion for summary judgment, finding there were "several genuine issues of material fact."   The court also said it had "significant concerns

---

[3]  Bell's husband (but not Bell) was sued by Fannie Mae in the Eastern District of Virginia for breach of a guaranty; Fannie Mae prevailed in that action on summary judgment.  Fed. Nat'l Mortg. Ass'n v. CG Belkor, LLC, 980 F. Supp. 2d 703 (E.D. Va. 2013).   Bell, her husband, and OHI are Defendants in another recently-filed case in Orange County, Florida Circuit Court.   See Complaint, RRA OHI Cinnamon Ridge LLC v. Bell, No. 2015-CA-005855-O (Fla. 9th Cir. Ct., Orange Cnty., June 24, 2015).   Finally, Bell, her husband, and OHI have sued Ministri and its members, Thomas and Victoria Ministri for defamation and other claims.   Only the defamation claim remains, the other claims apparently having been dismissed. See Third Amended Complaint, Bell v. Ministri, No. 2013-CA-011695-O (Fla. 9th Cir. Ct., Orange Cnty., July 28, 2015).

[4]  "*Fieri facias*" is a "writ of execution that directs a marshal or sheriff to seize and sell a judgment debtor's property to satisfy a money judgment."  Fieri facias, Black's Law Dictionary (10th ed. 2014).   The equivalent process under Florida law is an execution on a judgment.   See FLA. R. CIV. P. 1.550.

regarding whether or not the Court has jurisdiction to address this matter."   (Doc. 36, ¶ 20; Doc. 6-2 at 54-55).

Bell returned to the Sumter County court and, on December 30, 2013, filed a motion asking it to reconsider its order vacating its earlier order approving the transfer (Doc. 36, ¶¶ 11; Doc. 6-1 at 44-48).   MetLife objected on the ground that it could not take any action regarding the Annuity without risking multiple liability (Doc. 36, ¶ 12; Doc. 6-2, pp. 2-21).   On January 23, 2014, the Sumter County court denied Bell's motion (Doc. 36, ¶ 13; Doc. 6-2 at 23-24).

Facing conflicting claims to the Annuity from Bell, Slotnick, and Ministri, MetLife filed this interpleader action on March 21, 2014 (Doc. 1).   Ministri answered the complaint (Doc. 15).   Slotnick filed a motion to dismiss for lack of personal jurisdiction (Doc. 10), which the Court denied by Order dated August 15, 2014 (Doc. 31).   Bell did not answer the complaint, but she did participate in the preparation of the Case Management Report, and she entered an appearance on June 13, 2014 (Docs. 24-26). On August 25, MetLife moved to dismiss Slotnick from this case, after he disclaimed any interest he might have in the Annuity (Doc. 32).   On September 8, MetLife filed its motion asking the Court to approve its amended complaint for interpleader, dismiss it from this case, and enjoin further litigation against it relating to the fund (Doc. 36 at 12-13).

Despite the pendency of this case, litigation continued in state court.   On March 21, 2014, Ministri initiated garnishment proceedings against MetLife and Bell in the Richmond, Virginia court.   That proceeding has been stayed pending resolution of this case (Doc. 36, ¶¶ 43-48).   On July 11, 2014, Bell filed a Claim of Exemption and Request for Hearing in the Orange County, Florida action brought by Ministri to enforce its judgment (Doc. 36, ¶ 39).   The Orange County court denied the motion finding there

was no writ of garnishment pending from which the Annuity funds could be exempt (Doc. 36, ¶ 40; Doc. 36-1 at 11).   On August 1, 2014, Stone Street Capital LLC brought a petition in the Circuit Court for the 17th Judicial Circuit in and for Broward County, Florida asking that court to approve an agreement it made with Bell to transfer two of her Annuity payments in exchange for a lump sum cash payment (Doc. 36, ¶ 49; Doc. 36-1, pp. 25-43).   MetLife filed its opposition to the Stone Street petition on August 20, 2014. (Doc. 36, ¶ 51; Doc. 36-2).

On March 4, 2015, the Court dismissed MetLife from this action and realigned Ministri as the plaintiff and Bell as the defendant (Doc. 50).   On May 21, Ministri filed its motion for summary judgment (Doc. 55).   On June 29, Bell filed her response and cross-motion for summary judgment (Doc. 63).   On July 31, 2015, Ministri filed its response to Bell's motion, stating that it would stand on its original motion (Doc. 65).

## Legal Standard

A party is entitled to summary judgment if it can show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.   FED. R. CIV. P. 56.   An issue of fact is "genuine" if the evidence is such that a reasonable jury could find the fact in favor of the nonmoving party and "material" if the fact "might affect the outcome of the suit under the governing law."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ave. CLO Fund, Ltd. V. Bank of Am., N.A., 723 F.3d 1287, 1294 (11th Cir. 2013).

On a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor.   Ave. CLO Fund, 723 F.3d at 1294 (citing Blackston v. Shook & Fletcher Insulation Co., 764 F.2d 1480, 1482 (11th Cir. 1985)).   The Court need not, however, draw

inferences based solely on speculation and conjecture.   Id.   Moreover, the Court "must avoid weighing conflicting evidence or making credibility determinations," Stewart v. Booker T. Washington Ins., 232 F.3d 844, 848 (11th Cir. 2000), as it is the province of the jury and not the judge to assess the probative value of the evidence.   Kennett-Murray Corp. v. Bone, 622 F.3d 887, 893 (5th Cir. 1980).

The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists.   Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986); Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991); Watson v. Adecco Emp't Servs., Inc., 252 F.Supp.2d 1347, 1351-52 (M.D. Fla. 2003).   The movant may meet this burden in one of two ways: either by directly negating an essential element of the nonmovant's claim, or by showing that there is insufficient evidence in the materials on file for the nonmovant to establish its burden of proof at trial.   Clark, 929 F.2d at 608. When the moving party demonstrates an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must then "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."   Celotex Corp., 477 U.S. at 324-35 (internal quotations and citations omitted); Clark, 929 F.2d at 608.   In determining whether a fact is genuinely disputed, the Court may consider evidence not cited by the parties, but it is not required to do so.   FED. R. CIV. P. 56(c)(3).   If a party fails to support an assertion of fact or fails to address another party's assertion of fact, the court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if ... the movant is entitled to it; or (4) issue any other appropriate order."   FED. R. CIV. P. 56(e).

## Discussion

Although neither party raises the issue, I note at the outset that this case presents a multi-state fact pattern raising choice of law issues.   The accident leading to the Settlement and Assignment occurred in New York.   Both the Settlement and Assignment include a choice-of-law clause providing that New York law governs those agreements. The members of Ministri Family, LLC (as well as Slotnick) reside in Virginia; and so did Bell until she moved to Florida in 2010.   The judgments against Bell were entered by a state court in Virginia.   Ministri has domesticated its judgment against Bell in Florida, and has attempted to collect on its judgment in both states.

In Klaxon v. Stentor Electric Manufacturing Co., 313 U.S. 487 (1941), the Supreme Court held that a federal district court sitting in diversity must apply the conflict of law rules of the state in which it sits.   The Klaxon court called its decision an "exten[sion]" of the doctrine set forth in Erie R.R. v. Tompkins, 304 U.S. 64 (1938), "to the field of conflict of laws."   The reasoning in Klaxon at least partially invokes what the Supreme Court would later, in Hanna v. Plumer, 380 U.S. 460, 468 (1965), call the "twin aims of the Erie rule: discouragement of forum-shopping and the avoidance of inequitable administration of the law."   Cf. Klaxon, 313 U.S. at 496 (suggesting that, if federal courts applied uniform federal rules in the area of conflict of laws, "the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side").   On the same day it decided Klaxon, the Supreme Court extended the Klaxon rule to statutory interpleader cases in Griffin v. McCoach, 313 U.S. 498, 503 (1941), "[f]or the reasons given in Klaxon."[5]

---

[5] Griffin has been the target of "severe criticism," 7 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 1713 & n. 19, and not without reason.   The whole point of the federal interpleader statute is to provide a forum for stakeholders to bring claimants from different states together in one forum–a remedy

In Slatcoff v. Dezen, 76 So.2d 792 (1954), the Florida Supreme Court held that
§ 222.14, which at the time provided an exemption only for "[t]he cash surrender values of
life insurance policies issued upon the lives of citizens or residents of" Florida, applied as
long as the debtor is a Florida "citizen[] or resident[]" when the "exempt property is sought
to be subjected to legal process," regardless of whether the "insurance policies ... were
acquired while the debtor was a resident of another state."   Id. at 794.   While the Florida
legislature did not add the exemption for annuities to § 222.14 until 1978, there is no
reason to think the Florida Supreme Court would not extend its reasoning in Slatcoff to
annuity contracts.   The parties proceed under the assumption that Florida law governs
the question of whether the property at issue here is exempt and based on Slatcoff, I find
that their assumption is correct.[6]

That Florida law governs the issue of exemption does not mean that Florida law
controls the entire case.   Under Florida law, courts evaluate choice-of-law questions on
an issue-by-issue basis.   Dopson-Troutt v. Novartis Pharms. Corp., No. 8:06-CV-1708-
T-24-EAJ, 2013 WL 3808205, at *2 (M.D. Fla. July 22, 2013).   The Court is called upon
in this case to interpret three contracts, two of which include a clause stating that the

---

that may not be available in any state court due to limitations on personal jurisdiction.   Perkins State Bank
v. Connolly, 632 F.2d 1306, 1310-11 (5th Cir. 1980).   The typical forum choice in statutory interpleader
actions is not between state and federal court but between federal courts in the states where the claimants
reside.   See 28 U.S.C. § 1397 (venue in a statutory interpleader case is proper in any judicial district in
which one or more claimants reside).   If anything, the Griffin rule undermines the twin aims of Erie,
because the outcome can hinge on the "fortuitous" choice of a disinterested stakeholder to file in one
federal district court, rather than another.   See 7 Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1713.

    [6]  For completeness, I note that the Annuity payments would likely qualify for exemptions under
both Virginia and New York law.   With limited exceptions not applicable here, Virginia Code § 34-28.1
exempts from creditor process "causes of action for personal injury ... and the proceeds derived from court
award or settlement."   New York exempts "proceeds and avails" of life insurance contracts and annuity
contracts from creditor process.   See N.Y. INS. CODE § 3212.   However, unlike Florida's statute, New
York's statute provides a definition of annuity that clearly applies not only to the Annuity, but also to the
Assignment and the Settlement.   Id. § 3212(2) ("An annuity contract includes any obligation to pay certain
sums at stated times, during life or lives, or for a specified term or terms, issued for a valuable
consideration.")

agreement should be interpreted according to New York law.    When the parties to a

contract agree that a particular state's law governs their agreement, Florida courts will

honor their choice unless a litigant "show[s] that the foreign law contravenes [the] public

policy of" the State of Florida.    Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.,

761 So.2d 306, 311 (Fla. 2000).    The standard for "contraven[ing] public policy" is a high

one, and for good reason.    "Contractual choice of law clauses express the expectations

of the contracting parties."    In re E. Cameron Partners, L.P., No. 08-51207, 2011 WL

4625368, at *5 (W.D. La. Sept. 30, 2011).    Florida courts take seriously the policy of

protecting those expectations, a policy which is at the core of contract law.    See Mazzoni

Farms, 761 So.2d at 311.    Because the parties do not address this issue in their

memoranda and because the result of this case is the same under either state's law, I will

not explore this question any further.

The sole disputed issue in this case is whether the periodic structured settlement

payments from MetLife to Bell are exempt under FLA. STAT. § 222.14 which provides:

> the proceeds of annuity contracts issued to citizens or
> residents of the state, upon whatever form, shall not in any
> case be liable to attachment, garnishment or legal process in
> favor of any creditor of the person whose life is so insured or
> of any creditor of the person who is the beneficiary of such
> annuity contract, unless the insurance policy or annuity
> contract was effected for the benefit of such creditor.    Fla.
> Stat. § 222.14 (2005).

At first blush, the payments from MetLife to Bell look like "the proceeds of [an]

annuity contract[]" which are "issued to [a] citizen[] of" Florida.    Ministri, however, argues

that Bell is not a "beneficiary" of the Annuity, and that the Settlement is not an "annuity

contract" as those terms are used in § 222.14.

To determine whether Bell is a "beneficiary" of the Annuity and whether the Settlement is an "annuity contract," the court must construe § 222.14.   Federal courts deciding questions of purely state law are bound by decisions of the state's highest appellate court, whatever the basis for federal jurisdiction.   City of Chi. v. Morales, 527 U.S. 41, 61 (1999); O'Brien v. Skinner, 414 U.S. 524, 531 (1974).   This Court must construe § 222.14 in the way it believes the Florida Supreme Court would were this case before it.   Martin v. Theockary, 220 F.2d 900, 901 (5th Cir. 1955).[7]   The Florida Supreme Court has explained that "[t]he polestar of a statutory construction analysis is legislative intent."   W. Fla. Reg'l Med. Ctr., Inc. v. See, 79 So.3d 1, 8 (Fla. 2012).   The plain meaning of statutory text "is always the starting point" in ascertaining legislative intent.   GTC Inc. v. Edgar, 967 So.2d 781, 785 (Fla. 2007).   If the statute is ambiguous– in other words, if it is susceptible to multiple interpretations–courts must turn to other tools of statutory interpretation, including familiar canons of construction, extrinsic materials like legislative history, and "an examination ... of the purpose behind [the statute's] enactment."   W. Fla., 79 So.3d at 9.   In resolving any ambiguities in § 222.14, the Court must keep in mind the Florida Supreme Court's instruction that "[e]xemption statutes ... should be liberally construed in favor of a debtor so that he and his family will not become public charges."   Killian v. Lawson, 387 So.2d 960, 962 (Fla. 1980).

The Florida Supreme Court examined the scope of § 222.14 in In re McCollam, 612 So.2d 572 (Fla. 1993).   There, a debtor in bankruptcy was "the beneficiary/payee under an annuity contract purchased by [an insurance company] to provide payments in connection with a general release and settlement agreement" that resolved a wrongful

---

[7]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

death suit brought by her father's estate.   Id. at 573.   Over a creditor's objection, the bankruptcy court and then the district court held that the annuity payments were exempt under § 222.14.   Id.   On appeal, the Eleventh Circuit noted that the statute "appeared to exempt all annuity contracts from creditor claims in bankruptcy," but also "recognized that such a literal interpretation of the statute would permit [the debtor] to conceal her [wrongful death] claim ... as an asset."   Id.   Finding no Florida appellate precedent addressing the issue, the Eleventh Circuit certified the following question to the Florida Supreme Court: "Whether, as a matter of law, an annuity contract which is established in lieu of a creditor paying a debtor a lump sum presently owed is exempt from creditor claims in bankruptcy under FLA. STAT. § 222.14."   Id. at 572-73.

A divided Florida Supreme Court held that the payments were exempt.   Id. at 574. The court began by explaining that, "[w]hen the language of a statute is clear and unambiguous and conveys a clear meaning, the statute must be given its plain and ordinary meaning."   Id. at 573.   The statute's reference to the "proceeds of annuity contracts ... upon whatever form" means § 222.14 "clearly exempts all annuity contracts from creditor claims."   Id. at 573–74 (emphasis in original).   "Thus," the court reasoned, "the relevant issue is the meaning of 'annuity contracts' as used in section 222.14."   In defining "annuity contracts," the court noted that other chapters of the Florida statutes and court decisions from other states define "annuity" as a series of fixed payments made at stated intervals.   Id. at 574 (citing FLA. STAT. § 238.01(15); In re Gefen, 35 B.R. 368, 371 (Bankr. S.D. Fla. 1984); In re Howerton, 21 B.R. 621, 623 (Bankr. N.D. Tex. 1982)).   The Florida Supreme Court also quoted the definition of annuity in Black's Law Dictionary as "'[a] right to receive fixed, periodic payments, either for life or a term of years.'"   Id.

"Using these definitions as a guide," the court concluded that the contract before it was an annuity and that the payments were exempt under § 222.14.

Despite the Florida Supreme Court's broad definition of "annuity" in McCollam, federal courts have limited the scope of the exemption.   In In re Pizzi, 153 B.R. 357 (Bankr. S.D. Fla. 1993), the court held that periodic payments of lottery winnings were not exempt under § 222.14.   Id. at 358, 363.   After the debtor won the Connecticut State Lottery, the State "purchased an annuity contract from Met Life ... for the benefit of [the debtor]."   Id. at 359.   The annuity named the State as the "owner" and "beneficiary." Id.   It also identified "Connecticut State Lottery, Certification #512" as the "nominee;" the certificate in turn, named the debtor as the person entitled to payments.   Id. at 360. The bankruptcy court denied the debtor's claim of exemption, reasoning that the annuity was issued to the State, not the debtor, and identified the State as the beneficiary.   Id. The court construed § 222.14 to require that "the annuity itself" and not just the payments be "issued to a Florida resident," disagreeing with the contrary conclusion reached in In re Benedict, 88 B.R. 387 (Bankr. M.D. Fla. 1998).   Pizzi, 173 B.R. at 560.   The court rejected the debtor's argument that as the "nominee" of the annuity, she was a "beneficiary" pursuant to § 222.14, because "MetLife's payment obligations do not change regardless of what happens to the nominee" and because "the State of Connecticut receives the yearly [annuity] payments."   Id.   It rejected the debtor's argument that the annuity was purchased for her benefit, emphasizing that the debtor's name did not appear anywhere on the annuity contract.   Id. at 361.   The debtor in Pizzi also argued that the yearly payments from the State of Connecticut were themselves annuity payments, but the court rejected this argument as well.   Id. at 361-62.   The court read McCollam to hold only that "the purpose or source of funds of an annuity contract does

not affect the exemption," and declined to extend <u>McCollam</u> to "payment streams that are not payments under an actual annuity contract."   <u>Id.</u> at 362.

Likewise, a bankruptcy court in this district found that "property settlement payments provided in" a divorce decree (technically, an order dissolving a marriage) were not "proceeds of an annuity contract pursuant to § 222.14."   <u>In re Connor</u>, 172 B.R. 119, 120 (Bankr. M.D. Fla. 1994).   The court in <u>Connor</u> "agree[d] with the <u>Pizzi</u> court that <u>McCollam</u> requires an actual annuity contract before payments received may be exempt pursuant to section 222.14."   <u>Id.</u> at 121.   It distinguished cases allowing the exemption on the grounds that, in those cases, the contract was "identified as an annuity within the four corners of the contract."   <u>Id.</u>

Then, in <u>In re Solomon</u>, 95 F.3d 1076 (11th Cir. 1996) (per curiam), the Eleventh Circuit rejected a debtor's claim to an exemption under § 222.14 for structured settlement payments.   In <u>Solomon</u>, the debtor agreed to a structured settlement with the tortfeasor's insurer, under which the insurer was "required ... to purchase a commercial annuity contract from Transamerica Annuity Service Corporation to ensure that the agreement's payment schedule was complied with."   <u>Id.</u> at 1077.   The debtor "was not a party to" the annuity contract, which named the insurer as the payee.   <u>Id.</u>   The bankruptcy court denied the exemption, reasoning that the debtor was not the beneficiary of the annuity contract and finding that the settlement agreement itself was not an annuity.   <u>Id.</u> at 1078.   The district court reversed in part, concluding that "under the broad definition of 'annuity' provided by the Florida Supreme Court" in <u>McCollam</u>, the structured settlement was an "annuity" exempt under § 222.14.   <u>Id.</u>   On appeal, the Eleventh Circuit concluded that the agreement between the insurer and the debtor "does not qualify for the exemption provided by section 222.14."   <u>Id.</u>   The Eleventh Circuit acknowledged the "broad"

reading of § 222.14 in <u>McCollam</u>, but noted that the statute "does not shield all debts or 'accounts receivable' structured to resemble annuities from a debtor's bankruptcy estate." <u>Id.</u>   The court held that <u>McCollam</u> requires "the existence of an actual annuity <u>contract</u> before a series of payments may be exempt under section 222.14."   <u>Id.</u> at 1078 (emphasis in original) (citing <u>Conner</u>, 172 B.R. at 121).   Under <u>Solomon</u>, it is not enough that a contract provides for "a series of payments"; rather, "[t]o qualify for the exemption, the parties to the agreement must have intended to create an annuity contract."   <u>Id.</u> at 1079.   The court reasoned:

> The language of the agreement between [the debtor] and [the insurer] reveals that the parties did not intend to create such a contract.   <u>See</u> <u>Conner</u>, 172 B.R. at 121 (agreement must be identified as an annuity within four corners of the contract); <u>[In re] Dillon</u>, 166 B.R. [766, 768 (Bankr. S.D. Fla. 1994)] ("Had the Debtor intended the settlement payments to be paid under an annuity contract, he had the ability to create such a document."); <u>Pizzi</u>, 153 B.R. at 362 (lottery winnings never termed proceeds of an annuity; winner never called "beneficiary" or "payee").   The settlement agreement wholly concerns itself with resolving [the debtor's] 1984 claims against [the insurer]; it is a garden variety release of liability. The district court therefore erred by concluding that section 222.14 applies to exempt the payments made under the agreement from [the debtor's] bankruptcy estate.

<u>Id.</u>   Beyond its reference to "intent" and the three bankruptcy court case citations, the Eleventh Circuit did not attempt to define "annuity contract" or explain how intent to create such a contract might be manifested.

Relying on <u>Solomon</u>, the bankruptcy court in <u>In re Turner</u>, 332 B.R. 461 (Bankr. N.D. Fla. 2005), reached a similar result.   In <u>Turner</u>, the debtor settled claims against a liability insurer for a lump sum plus a series of defined monthly payments, and the insurer purchased an annuity contract "some time after" the settlement agreement was executed in order "to ensure payment under the agreement."   <u>Id.</u> at 462.   The annuity contract

was never made part of the record, but the application named the debtor's husband and

two children as beneficiaries and the debtor as the measuring life.   Id. at 462-63.   The

court found that the debtor was not a "beneficiary" of the annuity for purposes of § 222.14,

reasoning that "the exemption of proceeds is only appropriate when an individual is

named as a beneficiary of an annuity contract."   Id. at 464.   It also found that the

settlement agreement was not itself an annuity because, as in Solomon, it "was not

labeled as an annuity" and because it did not refer to the debtor "as a 'beneficiary' or

'payee,' terms commonly found in annuity contracts."   Id.

While Solomon and Turner denied the exemption to recipients of structured

settlement payments other courts have allowed them.   In In re Belue, 238 B.R. 218

(Bankr. S.D. Fla. 1999), the insurer purchased an annuity which named the debtor as

"Payee for Annuity Payments," but reserved to the insurer the right to change the payee

or beneficiary without the debtor's consent–a right it had not exercised in the first fifteen

years of the annuity.   Id. at 219.   The court found that the annuity payments were

exempt despite the fact that the insurer owned the annuity and had the right to alter the

debtor's status as payee.   Id. at 220.   The court noted that unlike in Pizzi and Solomon,

the debtor in Belue was actually named in the annuity contract.   Id. at 221.   It rejected

the creditor's argument that the insurer's right to change the payee or beneficiary

defeated the debtor's entitlement to the exemption.   Id. at 222-23.   In doing so, it relied

on In re Bennett, 217 B.R. 654 (Bankr. M.D. Fla. 1998), where the court found on similar

facts that "the debtor's 'revocable payee status does not prevent him from claiming the

annuity proceeds as exempt under § 222.14.'"   Belue, 238 B.R. at 223 (quoting Bennett,

217 B.R. at 658).   In both Belue and Bennett, "the debtor was 'not merely receiving a

stream of payments pursuant to a settlement agreement,'" but "enjoyed a 'payee status'

that entitled him 'to the annuity proceeds under the terms of the contract.'"   Id. at 223

(quoting Bennett, 217 B.R. at 658).   The Belue and Bennett courts refused to "'resort in

conjecture regarding Debtor's future payee status,'" instead finding based on "'the facts

presently before'" them that each debtor was "'currently the payee under the terms of the

annuity contract.'"   Id. at 223 (quoting Bennett, 217 B.R. at 658).   The Belue court also

held that § 222.14 requires only that the proceeds–and not necessarily the annuity itself–

be "issued to" a Florida resident, disavowing its contrary interpretation in Pizzi.   Id. at

222 (citing Pizzi, 153 B.R. at 160); accord Bennett, 217 B.R. at 657.

    Similarly, in In re Allen, 203 B.R. 786 (Bankr. M.D. Fla. 1996), the court found

annuity proceeds issued to a debtor exempt and rejected the creditor's argument that the

annuities were not issued to a Florida resident and did not name the debtor as a

beneficiary.   Id. at 794-95.   The Allen court agreed with Benedict that under § 222.14,

only annuity proceeds, and not the annuity itself, must be "issued to a resident of this

state."   Id. at 794.   Addressing the creditor's argument that the debtor was not a

"beneficiary" of the annuity, the court adopted the definition of "beneficiary" it set out in

Benedict: "'any person with a beneficial interest in the annuity, including the annuitant.'"

Id. at 794 (quoting Benedict, 88 B.R. at 393); see also In re Ebenger, 40 B.R. 463, 464

(Bankr. S.D. Fla. 1984) (construing "beneficiary" for purposes of § 222.14 to include not

only third party beneficiaries but also the annuitant).

    State courts have reached a similar conclusion.   In Windsor-Thomas Group, Inc.

v. Parker, 782 So.2d 478 (Fla. 2d DCA 2001), an annuity issued as part of a structured

settlement very similar to this one was found to qualify for the exemption.   Id. at 482; see

also State Farm Life Ins. Co. v. Fla. Asset Financing Corp., 786 So.2d 1, 3 (Fla. 4th DCA

2000) (holding that while structured settlement annuity was exempt, annuity issuer lacked

standing to assert statutory exemption on debtor's behalf).   Finally, and most recently, the Florida Fifth District Court of Appeal allowed the exemption and ordered a writ of garnishment dissolved in <u>Connor v. Seaside National Bank</u>, 135 So.3d 508 (Fla. 5th DCA 2014).   In <u>Connor</u>, annuities were issued to the debtor's husband, but were distributed to the debtor in the divorce decree.   <u>Id.</u> at 509.   Citing <u>Pizzi</u>, the creditor argued that the exemption did not apply because the annuity contracts did not name the debtor as the beneficiary.   <u>Id.</u> at 509-10.   The court rejected this argument, noting that "Black's Law Dictionary defines beneficiary as 'a party who will benefit from a transfer of property or other arrangement.'"   <u>Id.</u> at 509. "Under this definition," it reasoned, the debtor "is clearly a beneficiary of the annuity contracts because she is entitled to payment of the proceeds in accordance with the divorce decree."   <u>Id.</u> (citing <u>Benedict</u>, 88 B.R. at 389).

As an initial matter, I recommend the Court follow <u>Belue</u>, <u>Allen</u>, <u>Benedict</u>, and <u>Bennett</u>, and find that § 222.14 does not require that an "annuity contract[]" be issued to a Florida citizen or resident, but only that the "proceeds of [an] annuity contract[]" be issued to a Florida citizen or resident.   The statute is syntactically ambiguous on this point–the adjective phrase "issued to citizens or residents of this state" can be read as modifying "proceeds of annuity contracts," or as modifying just "annuity contracts."   As explained above, the weight of authority supports the former interpretation; indeed, even the author of <u>Pizzi</u>, which takes the contrary position, disavowed that position in <u>Belue</u>.   Requiring that the "annuity contract" itself be issued to a citizen or resident of Florida would mean that cases where an insurer (or assignee, as the case may be) procures an annuity to implement a structured settlement, and the annuity contract designates the debtor as payee and the insurer or assignee as the owner, the availability of the exemption would depend on whether the insurer or assignee was "a resident or citizen of Florida."   While

this might be a permissible legislative policy choice, it would also be a strange one, and courts should not construe ambiguous statutes "in a way that 'tag[s]'" the Florida Legislature "with 'a taste for the bizarre.'"   Prewett v. Weems, 749 F.3d 454, 461 (6th Cir. 2014) (quoting Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co., 529 U.S. 193, 201 (2000)).

Relying chiefly on Turner, Ministri argues that Bell is not the "beneficiary" of the Annuity because she is listed as the "measuring life" and not as the "beneficiary."   But, as cases like Allen, Connor, and Ebenger demonstrate, a debtor need not be labeled as a "beneficiary" in the annuity contract to be entitled to the exemption.   Whether someone is a "beneficiary" for purposes of § 222.14 does not turn on whether that person is called a "beneficiary" in the annuity contract, any more than whether someone is a "citizen or resident of Florida" turns on whether the contract says (truthfully or not) that the person "is a citizen or resident of Florida."   See Nazworth v. Swire Fla., Inc., 486 So.2d 637, 638 (Fla. 1st DCA 1986) ("[An] agreement's use of a certain descriptive label for one of the contracting parties is not determinative of the actual legal relationship.").   Indeed, if a person's status as a beneficiary for purposes of § 222.14 turns on the mere use of labels in a contract, an annuity issuer could extend an exemption to the entire world by defining "beneficiary" to mean "person."   Surely, this was not what the Florida Legislature had in mind when it passed § 222.14.   Cf. Shah v. Racetrac Petroleum Co., 338 F.3d 557, 575 (6th Cir. 2003) (reasoning that legislative intent would be undermined if parties could avoid application of state franchise law by including a disclaimer that "this contract does not create a franchise relationship under state or federal law").   The appropriate definition of "beneficiary" as that term is used in § 222.14 is the "plain and ordinary meaning" of the term in its statutory context.   Connor, 135 So.3d at 509 (citing State v.

Brake, 796 So.2d 522, 528 (Fla. 2001)).   In other words, a person is a "beneficiary" for purposes of § 222.14 if that person is entitled to payment of the proceeds of the annuity contract when the claim for the exemption is before the court.   Id. at 509 (explaining that a debtor was a beneficiary of an annuity because "she is entitled to payment of the proceeds"); Belue, 238 B.R. at 223 (finding that a debtor was the beneficiary for purposes of § 222.14 because she "was currently the payee" of the annuity).

Here–unlike in Turner–the evidence shows beyond doubt that Bell is the "beneficiary" of the Annuity within the meaning of § 222.14.   Although Metropolitan is the legal "owner" of the Annuity, it is undisputed that the proceeds have been and, if nothing changes, will continue to be paid from MetLife directly to Bell.   The Annuity itself specifies that "unless [Metropolitan] otherwise directs, [MetLife] will make all payments under the annuity to the person(s) named in the certificate."   (Annuity, p. 2).   Reading this provision in complete isolation, the reference to "person(s) named in the certificate" is ambiguous because the certificate names three "person(s)": Bell (the measuring life), her mother (the beneficiary), and Metropolitan (the owner).   (Id., p. 1).   However, another section of the Annuity suggests that Bell is the initial payee unless she dies–in which case the beneficiary is the default payee–or Metropolitan makes a contrary designation (Id., p. 3).   The Settlement, Assignment, and Annuity should be interpreted together because they are all part of a single transaction resolving Bell's claims against the tortfeasor and his insurer.   Hillsborough Cnty. Aviation Auth. v. Cone Bros. Contr. Co., 285 So.2d 619, 621-22 (Fla. 2d DCA 1973) (citing RESTATEMENT (SECOND) OF CONTRACTS § 235(c)); Coe v. Tough, 22 N.E. 550, 551 (N.Y. 1889).   The Assignment–which expressly contemplates the creation of the Annuity (Assignment, ¶ 6)–dispels any doubt that Bell is the payee.   The Assignment states that Metropolitan "may have [MetLife]

send payments ... directly to the payee(s) specified in Addendum No. 1." (Assignment, ¶ 7). The addendum expressly identifies Bell as the "payee." (Assignment, Addendum No. 1).

Subsequent statements by MetLife confirm that Bell currently is, and has been since 1995, the payee of the Annuity and thus a "beneficiary" for purposes of § 222.14. MetLife's communications with Bell refer to her as the "annuitant," cf. Allen, 203 B.R. at 794 (holding that an "annuitant" is a "beneficiary" of an "annuity"), describe the Annuity as "your annuity," and state that Bell is "entitled to" the Annuity payments (Doc. 62-1 at 10, 11). There is no suggestion that MetLife used this terminology in an effort to advance Bell's claim to an exemption, and at least one of the letters predates litigation between Bell and her creditors. MetLife's words to Bell–and its actions in paying her–are powerful evidence of its understanding of the transaction when it issued the Annuity. Lalow v. Codomo, 101 So.2d 390, 393 (Fla. 1958) ("[T]he actions of the parties may be considered as a means of determining the interpretation that they themselves have placed upon the contract."); Honeywell, Inc. v. J.P. Maguire Co., No. 93 CIV. 5253DABHBP, 2000 WL 307398, at *9 (S.D.N.Y Mar. 23, 2000) (rejecting effort by third party to "challenge the mutual understanding of two contracting parties as to the meaning of their agreement"); James v. Zurich-American Ins. Co., 203 F.3d 250, 257 (3d Cir. 2000) (emphasizing the primacy of contracting parties mutual understanding and course of performance over a third party's contrary interpretation).

Finally, Ministri's own words and conduct demonstrate its recognition that Bell is the payee of the Annuity and, absent a contrary designation by Metropolitan, is entitled to the Annuity payments. Ministri haled MetLife into court in Virginia in an effort to garnish Annuity payments due to Bell. As the Florida appellate court pointed out in Connor,

garnishment presupposes that "the proceeds of the contracts constituted a debt due to [the judgment debtor] at the time the writs were served."   135 So.3d at 510; see also VA. CODE § 8.01-511.   The memorandum Ministri filed in the Virginia court says without equivocation that "[t]he payee under the annuity is Heather Good, now known as Heather Bell."   (Doc. 55-5 at 2).   And: "[P]ayments to Bell beginning December 7, 2015 and continuing, as indicated on the schedule, through December 7, 2015 are guaranteed to Heather Bell."   (Id.).   In its prayer for relief, Ministri asks the Virginia court to "order that the payee designation currently on the Met Life policy be ordered to reflect the plaintiff, Ministri Family, LLC, as the payee for all payments moving forward [sic]."   (Id. at 3).

Indeed, this case has proceeded on the assumption that MetLife is obligated to and will make payments under the Annuity directly to Bell.   By contrast, in Pizzi, the annuity payments were made to the State of Connecticut, which in turn made payments to the debtor.   153 B.R. at 361.   If this case were like Pizzi, then Metropolitan would be the party responsible for paying Bell, and thus it, and not MetLife, would be the proper interpleader Plaintiff in this case (not to mention the proper garnishee in the state court collection litigation).   Ministri has acquiesced in MetLife's posture as interpleader plaintiff, even consenting to the final interpleader judgment discharging MetLife's liability and ordering it to "deposit the 2015 annuity payment with the Clerk of the Court." (Doc. 50 at 7).   And, Ministri has not moved the Court to join Metropolitan as an indispensable party or attempted to assert a claim of any kind against Metropolitan.

In short, while the Annuity does not specify who the initial payee is and contemplates that the identity of the payee may change over the term of the Annuity, the evidence—including the terms of the Settlement and Assignment, and the words and actions of MetLife and Ministri—show beyond any genuine doubt that Bell is currently the

payee of the Annuity, i.e., the person entitled to receive the payments.   As such, she qualifies as a "beneficiary" of an "annuity" under § 222.14.   The yet-unrealized possibility that Metropolitan might exercise its right to designate a different payee without Bell's permission has no impact on this result.   Belue, 238 B.R. at 223; Bennett, 217 B.R. at 658.

Because I find as a matter of law that Bell is the "beneficiary" of the Annuity in the relevant sense, I do not address at length her alternative arguments that the Settlement and Assignment each constitute annuities.   However, I note that while Ministri argues that the Settlement is not an "annuity," it does not respond to Bell's argument (see Doc. 62 at 16–18 & n. 2) that the Assignment also created an annuity.   Ministri acknowledges in its summary judgment motion that intent to create an annuity for purposes of § 222.14 "can 'be shown by labeling the agreement "annuity," using words such as "beneficiary" or "payee" or by labeling the settlement payments as proceeds of an annuity.'"   (Doc. 55 at 8 (quoting Turner, 332 B.R. at 464)).   Applying this test, the Assignment–which Bell is a party to–qualifies as an annuity, as the addendum uses the words "beneficiary" and "payee."   Finally, the inference drawn in cases like Solomon and In re Dillon, 166 B.R. 766 (Bankr. S.D. Fla. 1994), that the parties would have used the word "annuity" if they wanted to create one, carries little force in this case.   Both the Settlement and Assignment specify that they should be interpreted in accordance with the laws of the State of New York (Settlement, ¶ III.C; Assignment, ¶ 5).   Unlike FLA. STAT. § 222.14, the New York statute exempting proceeds of life insurance contracts and annuities from creditor process expressly defines "annuity" to include "any obligation to pay certain sums at stated times ... for a specified term or terms, issued for valuable consideration."   N.Y. INS. CODE § 3212(a)(2).   As both the Settlement and Assignment

easily meet this definition, there was no reason for the parties to use the magic word "annuity" in the Settlement.

Turning to the remedy, the interpleader statute allows a federal court in a statutory interpleader case to "make ... permanent" its preliminary injunction barring other litigation over the fund.   28 U.S.C. § 2361.   Given the volume of litigation over the Annuity payments before the preliminary injunction was entered, and the unrelated but ongoing litigation between the Bells and the Ministris in state court, I recommend the Court make permanent the part of its Order enjoining Ministri from "instituting or prosecuting any proceeding in state or federal court affecting the annuity or annuity payments."   (Doc. 50 at 7).   As applied to Bell, the injunction should be lifted in its entirety.   Finally, the Court should declare the proceeds of the Annuity exempt, but should not order MetLife to make payment to Bell or any other entity, to avoid disturbing Metropolitan's rights under the terms of the Assignment and Annuity, and to avoid interfering with any efforts Bell might undertake to transfer Annuity payments.

### Conclusion

For the reasons stated above, I respectfully recommend that the Court **DENY** Plaintiff Ministri Family, LLC's motion for summary judgment, **GRANT** Defendant Heather Bell's motion for summary judgment and enter final judgment:

1. Declaring the Annuity payments exempt from garnishment and other creditor process pursuant to FLA. STAT. § 222.14;

2. Directing the Clerk to return the 2015 Annuity payment to MetLife, if the judgment is entered prior to December 7, 2015;

3. Directing the Clerk to deliver the 2015 Annuity payment to Heather Bell, if the judgment is entered on December 7, 2015 or later;

4. Lifting the injunction in the Court's Order (Doc. 50), entered against Bell; and

5. Permanently enjoining Ministri from instituting or prosecuting any proceeding in state or federal court affecting the Annuity or Annuity payments.

Specific written objections to this Report and Recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. Fla. R. 6.02, within fourteen (14) days after service of this Report and Recommendation.   A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the report and recommendation containing the finding or conclusion.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on August 12, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record